```
                                                                          FILED
IN THE UNITED STATES DISTRICT COURT                                      JAN 0 8 2007
FOR THE NORTHERN DISTRICT OF WEST VIRGINIA
                                                                     U.S. DISTRICT COURT
GARRY MICHAEL DRENNAN,                                               CLARKSBURG, WV 26301
```

**Plaintiff,**

v.                                              Civil Action No. 1:06cv42
                                                (Judge Keeley)

**JIM RUBENSTEIN, WYETTA**
**FREDERICKS, SHANNON MARKLE,**

**Defendants.**

## OPINION/REPORT AND RECOMMENDATION

On March 17, 2006, the *pro se* plaintiff initiated this case by filing a civil rights complaint against the above-named defendants. Plaintiff was granted permission to proceed as a pauper on June 15, 2006. On July 12, 2006, the undersigned conducted a preliminary review of the complaint and determined that summary dismissal was not warranted at that time. Therefore, the Defendants were directed to answer to the complaint.

On July 18, 2006, Defendant Jim Rubenstein ("Rubenstein") filed a motion to dismiss the complaint. On August 2, 2006, Defendants Wyetta Fredericks ("Fredericks") and Shannon Markle ("Markle") filed a motion to dismiss. After the issuance of a Roseboro Notice, Plaintiff filed a combined reply to the two motions. This case is before the undersigned for a report and recommendation pursuant to LR PL P 83.01, et seq.

### I. Contention's of the Parties

#### A. Plaintiff

In the complaint, Plaintiff asserts that on March 18, 2005, he was sentenced by the Circuit Court of Lewis County to a term of not less that two years to not more than twenty years. Plaintiffs'

Judgment and Commitment order specifically states that his sentence is to be served at the Mt. Olive Correctional Complex. However, Plaintiff was ordered transferred to the Central Regional Jail ("CRJ") to be held until such time as his transfer could be made to the custody of the Division of Corrections ("DOC").

On the date this case was filed, Plaintiff was still being housed at the CRJ. In addition, Plaintiff was informed by a counselor there that it is standard practice for the DOC to hold inmates at the Regional Jails for the minimum term of their sentences. Plaintiff asserts that this practice of holding DOC inmates in the regional jails has been challenged in the Courts of the State. During those proceedings, the DOC has stated to the West Virginia Supreme Court of Appeals that the average stay for a DOC inmate in a regional jail is 190 days. Plaintiff asserts that his being held for 355 days is double that amount. Thus, Plaintiff contends that the defendants have conspired to hold him at the Central Regional Jail and that such conduct is both illegal and unconstitutional.

Plaintiff further asserts that by holding him at the CRJ for such a prolonged time period, he is being denied the rights and privileges of other DOC inmates being held at regular DOC facilities. Such rights and privileges include more frequent contact visits, better exercise opportunities, better educational opportunities, better medical attention and better work opportunities. As relief, Plaintiff seeks an Order directing the DOC to immediately transfer him to a DOC facility and directing the DOC to stop housing DOC inmates at the regional jails.

## B. **Defendant Rubenstein**

In his motion to dismiss, Rubenstein asserts that Plaintiff has failed to state a claim for which relief can be granted and that prospective relief is not proper against this defendant. In support of his claims, Rubenstein states that in order to qualify for prospective relief with respect to prison

2

conditions, Plaintiff must first establish that a federal right has been violated. However, Plaintiff has no right to be housed in a particular facility nor can he establish that his right to equal protection has been violated. In addition, Plaintiff cannot show that his being housed in a regional jail is the product of a conspiracy. Instead, housing DOC inmates in a regional jail facility is a product of overcrowding, not discrimination. Thus, the DOC's decision to house inmates in a regional jail is rationally related to it legislative purpose of providing incarceration and care to convicted persons.

In addition, Rubenstein notes that Plaintiff's claims in this case are substantially similar to a case already decided by the Fourth Circuit Court of Appeals. In that case, the Fourth Circuit held that prisoners housed in local facilities were not similarly situated to prisoners housed in state facilities, or alternately, that there was a rational basis for the differential treatment. Therefore, the Fourth Circuit concluded that the plaintiff failed to state an equal protection claim.

Accordingly, Rubenstein requests that the Court dismiss the complaint.

## C. **Defendants Fredericks and Markle**

In their motion to dismiss, Fredericks and Markle assert that the relief Plaintiff seeks is a writ of mandamus. Moreover, the West Virginia Supreme Court of Appeals has recently determined that a writ of mandamus is not appropriate in this case because there is no evidence that housing DOC inmates in the regional jails results in a constitutional violation. See Sams v. Kirby, 208 W.Va. 726, 542 S.E.2d 889 (2006). The Defendants further assert that in order issue a writ of mandamus, three elements must exist. They are: (1) existence of clear right in petitioner to relief sought; (2) existence of legal duty on part of respondent to do the thing petitioner seeks to compel; and (3) the absence of another adequate remedy at law. Fredericks and Markle contend that because Petitioner cannot establish a clear right to the relief sought, this Court does not have the authority to issue a writ of

3

mandamus. Accordingly, those defendants request that the writ be denied and the case be dismissed.

**D. Petitioner's Reply**

In his reply to the Defendants' motions, Plaintiff submits three documents which he hopes will convince the Court that he should be housed in a DOC facility. First, Plaintiff offers a copy of his Judgment and Commitment Order from the Circuit Court of Lewis County. Second, Plaintiff offers nine pages from a report by the DOC regarding the housing of DOC inmates in regional jails. In that document, the DOC states that the average time a DOC inmate spends in a regional jail is 190 days. However, at the time he filed his reply, Plaintiff asserts that he had been housed in the regional jail for 524 days. Third, Plaintiff submits a ruling by the West Virginia Supreme Court of Appeals in which a similar claimant in state court was denied a writ of mandamus. Plaintiff asserts that this case will show that this problem has been ongoing for a number of years, but that no one in the State of West Virginia wants to take responsibility for correcting it. Plaintiff asserts that the DOC's practice of placing inmates in holding facilities, and the regional jails acquiesce to this scheme, constitutes a conspiracy between the DOC and the regional jail authority. Accordingly, Plaintiff asks that the Court rule in his favor and order that he forthwith be transferred to a DOC facility.

## II. Analysis

### A. Mootness

Under Article III, § 2 of the Constitution, the jurisdiction of a federal court is limited to cases or controversies. Honing v. Doe, 484 U.S. 305, 317 (1988). "The doctrine of mootness derives from this limitation because an action that is moot cannot be characterized as an active case or controversy." Adler v. Duval County Sch. Bd., 112 F.3d 1475, 1477 (11th Cir. 1997). To be justiciable under Article III, "the conflict between the litigants must present a 'case or controversy'

both at the time the lawsuit is filed *and* at the time it is decided." Ross v. Reed, 719 F.2d 689, 693 (4th Cir. 1983) (emphasis in the original). If events occur subsequently to the filing of a lawsuit that divest the court of the ability to award meaningful relief, the case is moot. Id. at 693-694.

Here, there was a justiciable case at the time the complaint was filed. However, since the initiation of this action, Plaintiff has been transferred from the regional jail to the custody of the DOC. Plaintiff is currently incarcerated at Huttonsville Correctional Center. Therefore, to the extent that Plaintiff requests the Court issue an Order directing his transfer to a DOC facility, that issue is now moot. As to Plaintiff's additional claims, the undersigned finds as follows.

## B. **Prospective relief**

Pursuant to 18 U.S.C. § 3626(a)(1),

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantial weight to any adverse impact on public safety or the operation of the criminal justice system caused by the relief.

Prospective relief includes all relief other than compensatory damages. 18 U.S.C. § 3626(f)(7). Therefore, in order to state a claim for prospective relief, Plaintiff must first show the violation of a federal right. In this case, Plaintiff argues that DOC inmates should not be housed in regional jails and that doing so violates the equal protection clause.

### 1. Right to Transfer

As noted by Rubenstein, it is well-established that an inmate has no right to be housed in any particular facility. Meachum v. Fano, 427 U.S. 215 (1976). Accordingly, Plaintiff cannot assert that

any federal right is violated when the DOC does not immediately transfer an inmate to a DOC facility.

## 2. Equal Protection

The equal protection clause provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. In other words, governmental decisionmakers may not treat like persons differently. See Veney v. Wyche, 293 F.3d 726, 730 (4th Cir. 2002). Thus, in order to establish an equal protection violation, Plaintiff must show that he has been treated differently from others who are similarly situated and that the unequal treatment was a result of intentional discrimination. See Morrison v. Garraghty, 239 F.3d 648, 654 (4th Cir. 2001). However, prisoners are not a suspect class per se and "the status of incarceration is neither an immutable characteristic, nor an invidious basis of classification." Moss v. Clark, 886 F.2d 686, 690 (4th Cir. 1989). Therefore, Plaintiff must also show that his treatment was not rationally related to a legitimate governmental interest. Id.

Here, Plaintiff concedes that the prolonged placement of inmates in a regional jail is due to the DOC's limited resources and lack of beds in its facilities. Thus, Plaintiff has failed to establish any intentional or purposeful discrimination on the part of the DOC in housing inmates in regional jails. Moreover, pursuant to statute, "[t]he primary purpose of the division of corrections is to enhance public safety by providing for the incarceration and care of convicted offenders who have been sentenced by courts of proper jurisdiction to serve terms of incarceration." See W.Va. Code § 25-1-1a. Therefore, housing inmates in regional jails when adequate bed space is not available in DOC facilities, is rationally related to a legitimate governmental interest.

In addition, the undersigned notes that the Fourth Circuit Court of Appeals has rejected

similar claims made by Virginia State prisoners in Khaliq v. Angelone, No. 02-7365, 72 Fed. Appx. 895, 2003 WL 21689152 (4th Cir. July 21, 2003) (per curiam). In Khaliq, 29 prisoners were sentenced to terms of imprisonment in state correctional facilities, but ended up being housed in regional jails. The prisoners sued the Virginia DOC alleging that their equal rights were being violated. However, the Fourth Circuit found that prisoners in local facilities were not similarly situated to prisoners in state facilities for purposes of evaluating the physical space, programs and opportunities available to them.[1] Alternately, the Court found that assuming the prisoners were similarly situated, there was a rational basis for the differential treatment. Accordingly, the plaintiff here, much like the plaintiffs in Khaliq, has failed to state a claim that the West Virginia DOC has violated the equal protection rights of its inmates by housing them in regional jails.

## C. Writ of Mandamus

Pursuant to 28 U.S.C. § 1361, "the district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." However, the Court's authority to issue a writ of mandamus extends only to the issuance of writs necessary or appropriate in aid of its jurisdiction. 28 U.S.C. § 1651. "The remedy of mandamus is a drastic one, to be invoked only in extraordinary circumstances." Kerr v. United States Dist. Court, 426 U.S. 394, 402 (1976). "The party seeking mandamus relief carries the heavy burden of showing that he has no other adequate means to attain the relief he desires and that his right to such relief is clear and indisputable." In re Beard, 811 F.2d

---

[1] Interestingly, Plaintiff's equal protection claims in this case are eerily similar to those of the inmates in Khaliq. The Virginia inmates in Khaliq argued that they were treated dissimilar to inmates housed in DOC facilities because the regional jails had less space, no work release programs, no ability to earn money, no furlough programs, no contact visits with family members, no exercise facilities, no vocational training programs and less adequate medical facilities.

818, 826 (4th Cir. 1987) (internal quotations omitted).

Here, Plaintiff seeks an Order compelling the DOC to transfer him and other DOC inmates to a DOC facility for the service of their sentences. However, as noted above, Plaintiff has not shown a clear and indisputable right to the relief sought. Accordingly, to the extent that Plaintiff seeks a writ of mandamus against the DOC, such writ should be denied.

### III. Recommendation

For the foregoing reasons, it is the recommendation of the undersigned that Defendants' motions to dismiss (dckt. 9 and 15) be GRANTED and the complaint be DISMISSED.

Within ten (10) days after being served with a copy of this Opinion/Recommendation, any party may file with the Clerk of Court written objections identifying those portions of the recommendation to which objection is made and the basis for such objections. A copy of any objections shall also be submitted to the Honorable Irene M. Keeley, United States District Judge. Failure to timely file objections to this recommendation will result in waiver of the right to appeal from a judgment of this Court based upon such recommendation. 28 U.S.C. § 636(b)(1); Thomas v. Arn, 474 U.S. 140 (1985); Wright v. Collins, 766 F.2d 841 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91 (4th Cir. 1984), cert. denied, 467 U.S. 1208 (1984).

The Clerk is directed to mail a copy of this Opinion/Report and Recommendation to the *pro se* plaintiff and any counsel of record.

DATED: January 8, 2007.

JOHN S. KAULL
UNITED STATES MAGISTRATE JUDGE